THE STATE v. McKENZIE, *Appellant.*

Division Two, May 17, 1898.

1. **Criminal Law**: CONFESSIONS: PRELIMINARY QUESTION: PRACTICE. The correct and approved practice in criminal matters as to confessions of the defendant, is for the trial judge to first hear all the circumstances attending the confession; and it is for him to determine, as a preliminary question, whether or not the confession is voluntary, before permitting it to go the jury. In this case a confession establishing defendant's guilt, is held to have been voluntary, and not extorted through threats or fear of a mob.

2. ———: ——: ———. When a confession is admitted in evidence, all the circumstances under which it was made should be allowed, under proper instructions, to go to the jury. All the facts bearing upon the confession, to whom made, who were present, the different versions of the confession as heard by the different witnesses and every ligitimate fact having a tendency to sustain or weaken its effect, are proper matters to go to the jury.

*Appeal from Cole Circuit Court.*—HON. DORSEY W. SHACKLEFORD, Judge.

·AFFIRMED.

*James H. Lay, Joseph R. Edwards* and *F. M. Brown* for appellant.

(1) The court erred in allowing the confessions of appellant made to the officers having him in charge to be admitted in evidence, because obtained through fear and by threats and inducements; in short, they were not free and voluntary confessions as required by the law. 1 Greenl. on Ev. [14 Ed.], sec. 214, p. 275, and

note; sec. 219, p. 281; sec. 223, p. 288; sec. 222, p. 287; Wharton's Crim. Ev. [9 Ed.], sec. 650, p. 554; sec. 646, p. 552; sec. 623, p. 537; sec. 625, p. 538; sec. 626, p. 538; sec. 627, p. 539, and note; sec. 630, p. 543; Underhill on Ev., sec. 88a, p. 125; sec. 89, p. 128; sec. 95, p. 135; *Hector v. State*, 2 Mo. 166; *Couley v. State*, 12 Mo. 462; *State v. Brockman*, 46 Mo. 566; *State v. Hogan*, 54 Mo. 192; *State v. Jones*, 54 Mo. 478; *State v. Duncan*, 64 Mo. 263; *Flagg v. People*, 40 Mich. 706; *Self v. State*, 6 Baxter, 244; *Ford v. State*, 21 So. Rep. 524; *People v. Thompson*, 84 Cal. 598; *Williams v. State*, 72 Miss. 117; *Simon v. State*, 37 Miss. 288; *People v. Ward*, 15 Wend. 231; *People v. Rankin*, 2 Wheeler's Crim. Cases, 467; *Ann v. State*, 2 Humph. 39; *Beery v. U. S.*, 2 Col. 186; *Commonwealth v. Nott*, 135 Mass. 269; *Bubster v. State*, 33 Neb. 663; *State v. Mims*, 43 La. Ann. 532; *Montana v. McClin*, 1 Mont. 394. (2) If confession made to Sheriff Sone and Marshall Henderson is held inadmissible, then also must the confession made to witness Clay be held inadmissible, because confession to Clay was made almost directly after one to Sone and Henderson, and the law holds that under such circumstances the influence continues, and the second confession is therefore as inadmissible as first. 1 Roscoe's Crim. Ev. [8 Ed.], star p. 50; Wharton's Crim. Ev. [9 Ed.], sec. 677; 1 Greenl. on Ev. [14 Ed.], sec. 221; *State v. Jones*, 54 Mo. 478; *Beery v. U. S.*, 2 Col. 186; *Murray v. State*, 25 Fla. 528; *Simon v. State*, 37 Miss. 288; *Ford v. State*, 21 So. Rep. 524; *Banks v. State*, 4 So. Rep. 382.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

(1) The court properly heard the testimony as to the competency of the confession before passing on its

admissibility. Wharton on Crim. Ev., sec. 689; *State v. Fidment*, 35 Iowa, 541. (2) The instruction of the court to the jury as to the confession or as to the evidence of the confession was proper. *State v. Fidment*, 35 Iowa, 541; *State v. Vann*, 82 N. C. 632. (3) If the confession is voluntary on its face the burden is on the defendant to show it to be incompetent. 25 Ohio St. 464; Wharton's Crim. Ev., sec. 689. The confession of the defendant was voluntary. *State v. Buster*, 26 Ala. 129. (4) Either party has the right to prove to the jury the same facts and circumstances which were legally proved to the court when it was called upon to decide the question of competency, and all other circumstances applicable to the confession or having any legal bearing on its credibility or effect; and if, in view of all the facts and circumstances proved, the jury entertain a reasonable doubt as to the truth of the confession, they may disregard it in their decision of the case, as being incredible, although they can not reject it as incompetent. *Com. v. Dillon*, 4 Dall. 116; *Com. v. Knapp*, 10 Pick. 477; 2 Phil. Ev. 235–240, notes 205 and 207; *Garrard v. State*, 50 Miss. 152. (5) A confession is presumed to be voluntary unless the contrary is shown, or something appears in the confession or its attendant circumstances to combat such circumstances. *State v. Meyers*, 99 Mo. 107; *State v. Patterson*, 73 Mo. 695. It is for the court to determine as a preliminary question whether a confession was made with that degree of freedom which ought to permit its admission as evidence. *State v. Duncan*, 64 Mo. 262; *State v. Patterson*, 73 Mo. 695. (6) It is the province of the jury to determine the weight of the confessions. *State v. Brooks*, 92 Mo. 542.

GANTT, P. J.—At the March adjourned term, 1896, of the Cole county circuit court the defendant, Ed.

McKenzie, a negro man, was indicted for the murder of Nicholas Linhardt near Lohman Station in said county, on the night of April 30, 1896. Defendant was arrested but escaped from prison and remained at large until September, 1897, when he was again apprehended. He was tried at the November adjourned term, 1897, of the circuit court of Cole county, in January 1898, and convicted of murder in the first degree. From the sentence he prosecutes this appeal.

The court instructed the jury as follows:

"If you find from the evidence that at the county of Cole and State of Missouri, at any time before the finding of the indictment herein, the defendant did willfully, deliberately, premeditatedly and of his malice aforethought kill Nicholas Linhardt, by striking him on the head with a club or stick of wood which was a deadly weapon, then you will find the defendant guilty of murder in the first degree.

" 'Willfully' means intentionally—that is, not accidentally.

" 'Deliberately' does not mean brooded over, or reflected upon for a week, a day, or an hour, but it means a conscious purpose to kill, formed in a cool state of the blood, and not under a violent passion suddenly aroused by some real or supposed grievance.

" 'Premeditatedly' means thought of beforehand for any length of time, however short.

" 'Malice' does not mean mere hatred, spite or ill-will as ordinarily understood; but it means that the killing was wrongfully and intentionally committed. And "malice aforethought" means that the killing was with malice and premeditation.

"The defendant is presumed to be innocent of the offense charged against him, and this presumption entitles him to an acquittal unless overcome by evidence

sufficient to convince you of his guilt beyond a reasonable doubt.

"If upon consideration of all the evidence you have a reasonable doubt of the defendant's guilt, you must acquit him, but such doubt to warrant an acquittal should be a substantial doubt of his guilt and not a mere possibility of his innocence.

"You, also, are the judges of what credit you will give to the testimony of the witnesses.

"If you find that the defendant fled the country for the purpose of avoiding trial upon this charge, it is a circumstance tending to show guilt, which you may consider with the other facts and circumstances in evidence.

"In considering what the defendant said after the killing in any conversation proved by the State, all of such conversation must be considered together. He is entitled to what he said in favor of himself, if true, and the State is entitled to what he said against himself. What he said against himself, if anything, the law will presume to be true, because said against himself; but what he said for himself you are not bound to believe, because said in a conversation proved by the State. But you may believe, or disbelieve the same as you find it to be true or false by the evidence in the case.

"If you believe any admission of the defendant testified to by any witness was induced by fear on the part of the defendant that he would be taken from the penitentiary back to the city of Jefferson and there subjected to the perils of a mob, then you will disregard such admissions and all others made subsequent thereto."

To the giving of which instructions the defendant, by counsel, excepted at the time.

The defendant, upon his part, prayed the court to instruct the jury as follows:

"1.   The jury are instructed to exclude from their consideration all evidence purporting to be the confession of defendant.

"2.   The jury will, in determining this case, exclude from their consideration the alleged confessions of defendant to S. H. Sone and J. J. Henderson."

And said instructions prayed by the defendant numbered 1 and 2 the court refused to give to the jury; to which refusal of the instructions thus prayed, the defendant, by counsel, excepted at the time.

And thereupon the jury returned the following verdict, finding the defendant guilty of murder in the first degree: "We, the jury, find the defendant guilty of murder in the first degree."

I.   The indictment is in due form.   The arraignment of the prisoner, the empaneling of the jury and the trial were all in accordance with approved practice.   No error is apparent in the record proper and the learned counsel for defendant suggest none.

The evidence discloses that the prisoner had been employed at different times by deceased as a laborer on his farm; that in this way he became apprised of a habit of deceased to carry considerable sums of money on and about his person.   He knew deceased had been to St. Louis with cattle to sell, just a short time before the murder, and said he killed him for the money.   He left Jefferson City for that purpose that day.   On the afternoon of April 30, Linhardt, the deceased, came over to Lohman Station and sat and talked with a neighbor at Couch's store until it was getting dark when he started home.   About 9 o'clock that same night he was found unconscious in the public road by J. B. Linhardt and F. W. Blochberger on their return home from Jefferson City. When they found him they discovered he had apparently been beaten over the head with a club or other

blunt instrument. They placed him in their buggy and took him to his home. He died about 10 o'clock on the morning of May 1, 1896. A *post mortem* by the coroner, Dr. Son, disclosed that the left side of his skull was broken in various places, extending from the frontal portion of the skull clear back to the occipital protuberance. Both the external and internal plate of the skull were fractured, mashing down the brain. The blows which inflicted these wounds unquestionably caused his death.

As no one witnessed the homicide the neighbors at once began to investigate. Mr. Charles Lohman made an examination of the ground where deceased was found, the next morning. He found a pool of blood and crossed the road into the west field and finding nothing, he crossed into the east field and there near the edge of the woods found a club with hairs sticking on it. He took the club to the house and compared the hairs on the club with the hair of deceased, and concluded they were part of the eyebrows of Mr. Linhardt. Subsequently defendant confessed he killed deceased with that club and told witnesses where he cut it. They took the club and found the stump from which it was cut just as he described it. Mrs. Hines, who lives about a quarter of a mile from Meadow's Ford on the Moreau river, two and a half miles from Lohman Station, was at home, on April 30, and saw defendant, whom she had known for ten years, pass in the direction of Lohman Station. Nicholas Pistol who knew defendant well met him in the road. Defendant between sunset and dark near Meadow's Ford was putting on his shoes by the roadside. Upon this information defendant was arrested and placed in jail in Jefferson City. The brutal nature of the murder caused much excitement and the sheriff thought it prudent to take the prisoner within the penitentiary walls. As the sheriff, Sone,

and J. J. Henderson were taking the prisoner from the jail to the penitentiary he said to them he was present at the killing, but didn't do it. He implicated two other negroes, his stepfather and a man named Williams. After the old negro was arrested he asked to be taken to Ed, saying Ed knew he was innocent. The old man was taken to the penitentiary and confronted the prisoner. He adjured Ed, the prisoner, to look him in the face and tell the officers whether he, the old man, had anything to do with the murder. Defendant first said that his stepfather was there and hit and killed deceased. Mr. Tolin, an officer in the prison, then spoke to defendant and said: "Now if it is true that your stepfather had nothing to do with it you ought not to say so. You ought not to tell a story on the old man." At this point all the bystanders say the prisoner seemed overcome by his feelings but after a little recovered his self-possession and said: "I am willing to tell the truth about it, and if Mr. Henderson and Mr. Sone will come around here to the cell I will tell them all about it." At this point counsel for defendant objected to evidence of his confession because it was not voluntary, but had been extorted by fear of being mobbed. Thereupon the court heard all the circumstances attending the making of the confession. All the witnesses testified without exception that no promises of clemency were made to defendant and no threats made to induce him to make the confession. Indeed the objection seems based almost exclusively upon the testimony of the witness Clay, who says that the sheriff said something like this, "Ed, I will have to take you down town before I can turn your father loose." But when it is considered how doubtful the witness was as to the statement, its apparent want of connection with anything being said at the time, and his own unqualified testimony that the

sheriff made neither threats nor offered any induce-
ments to obtain the confession, it is evident that no
error was committed in receiving the evidence of the
confession.   The learned circuit court pursued the cor-
rect and approved practice in first hearing the circum-
stances attending the confession.   It was the duty of
the court to determine as a preliminary question
whether the confession was voluntary before permitting
it to go to the jury.   *State v. Patterson*, 73 Mo. 695;
*State v. Hopkirk*, 84 Mo. 278.   We have considered
this point with a view to the serious character of the
offense and with a view to the importance attached to
it by defendant and his counsel and have reached the
conclusion that the confession was voluntary, and no
ground for its exclusion existed.   That confession es-
tablished his guilt beyond a shadow of a doubt.   In it
he stated to the witnesses Henderson and Sone that he
left Jefferson City with the intention of going out to
kill Mr. Linhardt for the money; that he knew he al-
ways carried a good roll on him and had just been to
St. Louis to sell some·cattle; that he killed him by
himself, that no one else took any part in the murder.
He said he cut the club north of old man Bolton's
house.   He stood on the roadside until he saw Mr.
Linhardt coming, and then got out into the road,
walked up and met him, and just as he passed he
wheeled about and hit the deceased in the head.
He said he struck him three times in the head
with the club, and then took his money out of his
pocket, and went into the field and threw the club
in the brush where it was found by Mr. Lohman. Hav-
ing admitted it as evidence, the court correctly ruled
that all the circumstances under which it was made
should be considered by the jury, under appropriate in-
structions.   All the facts bearing upon the confession,
to whom it was made, who were present, the different

versions of the confession as heard by the different witnesses; the manner of the witnesses relating the story—every legitimate fact having a tendency to sustain or weaken its effect was proper to be weighed by the jury in making up their verdict.

The record discloses that every step in the trial was carefully taken, with scrupulous regard for the rights of the defendant and the conclusion was inevitable that defendant had murdered an inoffensive and unsuspecting citizen in the night time in the perpetration of a highway robbery. It is such a homicide as the law of Missouri justly denominates murder in first degree.

No error appearing either in the record proper, instructions of the court or evidence, the judgment of the circuit court is affirmed and the sentence of the law is directed to be executed. SHERWOOD and BURGESS, JJ., concur.