## THE STATE v. STEBBINS, Appellant.

### Division Two, May 16, 1905.

1. **DRUNKENNESS: Instruction: Robbery: Insanity.** Where defendant's counsel, in introducing evidence of his intoxication on the occasion of the robbery, disclaims any effort to show defendant was insane, it is the duty of the court to instruct the jury that drunkenness cannot justify, excuse or mitigate the offense of robbery.

2. **CONFESSION: Duty of Court.** It is the duty of the court to determine, as a preliminary question, whether defendant's confession was voluntary before permitting it to go to the jury.

3. ————: **Prima Facie Admissible.** Prima facie the confession of a defendant is admissible in evidence; and the fact that defendant testified that he was induced to make the confession by promise of the prosecuting attorney that if he would tell the truth about the robbery he would be prosecuted only for fighting and drunkenness and that he would get off with a fine of $7.50, does not overcome the prima facie case, and the testimony of the officers that his confession was voluntary.

4. ————: ————: Comprehénsion of Its Significance: Question For Jury. Although defendant testifies to facts and circumstances from which it may be inferred that he did not comprehend the consequences of signing the confession introduced in evidence against him, yet if the State's witnesses testify that he talked intelligently and did know what he was saying and doing at the time, and that he himself dictated the confession in their presence and that it was written down by the prosecuting attorney in his presence and read over to him and he said it was all. right and then signed it, the court should admit it in evidence, and then it becomes the duty of the jury to determine whether the testimony of the State's witnesses on the subject or that of the defendant was true.

5. ————: Action of Prosecuting Attorney. No person can be compelled to testify against himself in any criminal prosecution, and a proper appreciation of the rights of the accused forbids the prosecuting attorney from having the prisoner brought to his office and then and there inquiring of him as to his connection with the alleged crime.

6. ————: Instruction. An instruction which, after telling the jury that a confession of defendant, voluntarily made, is evidence against him, requires the jury to acquit defendant if they "believe that at the time said alleged confession was made the defendant did not have sufficient mind or memory to comprehend what he was saying or doing, whether such confession was the result of intoxication or weakness of mind, or both, or that the same was made by inducements held out to him or by promises which operated upon the mind in the hope of escaping punishment, or any other inducements amounting to fears, threats or promises," is all that a defendant may reasonably expect.

7. ————: Withdrawal of Jury. It is not reversible error not to send the jury out while the preliminary evidence as to the admissibility of defendant's confession is being heard. That is a matter within the discretion of the court.

Appeal from Ray Circuit Court.—*Hon. J. W. Alexander, Judge.*

AFFIRMED.

*J. L. Farris* for appellant.

(1) It was erroneous on the part of the court and highly prejudicial to the defendant for the court to give instruction 2. Evidence of drunkenness was only

introduced as bearing upon the mental condition of the defendant at the time of obtaining his alleged confession. By this instruction this very necessary evidence is used as a weapon against the defendant by instructing the jury "that drunkenness in any degree cannot justify, excuse or mitigate the commission of a crime." This proposition was never denied or put in issue by the defendant. (2) Instruction 7 given for the State and bearing upon the admissibility of the alleged confession is also erroneous. The beginning of the instruction is more applicable where the State was resting upon simple admissions, which might have been made from time to time by the defendant, but wholly misconceives the difference between the care and caution of accepting confessions and the rule for the guidance of the jury in weighing admissions. A confession is something more than an admission; if believed, it becomes a Krupp cannon, while common admissions are but minnie balls, the force of which is more easily spent. Confessions, to be admitted as against the denial of guilt, must come from an untainted source; the damning instrument relied upon by the State must have been born under circumstances free from suspicion of improper conduct on the part of the officers. This instruction does not safeguard the proposition as it should be in the light of the testimony. (3) The court did not fully instruct the jury, although requested to do so, to which failure defendant excepted. An instruction should have been given to the effect that if defendant did not understand the legal effect and the consequent punishment which would follow his conviction of the charge mentioned in the confession, then the confession should not have been considered against the defendant. State v. German, 54 Mo. 526. The court should have instructed the jury that "the age, the experience and constitution of the person making the confession, and the circumstances under which it was made, should all be considered in determining the

weight to be given to it, as well as its admissibility."
State v. Fredericks, 85 Mo. 145. This confession was
not voluntary, and should have been held inadmissible
for that reason. State v. Brockman, 46 Mo. 566. (4)
The court should have heard the evidence touching the
manner of procuring the confession, as a preliminary
question, and this error was not cured by submitting
the question to the jury. State v. Kinder, 96 Mo. 548.

*Herbert S. Hadley*, Attorney-General, and *North
T. Gentry*, Assistant Attorney-General, for the State.

No error was committed in admitting in evidence
the defendant's written confession. As the same is not
contained in the bill of exceptions, this court must pre-
sume that it was not germane to the issue. The allega-
tion in the motion for a new trial that the evidence was
improperly admitted does not prove itself. State v.
Ashcraft, 170 Mo. 409.

GANTT, J.—On the 16th of October, 1903, the
prosecuting attorney of Ray county, Missouri, filed an
information against John Stebbins and William Ev-
ans, in words and figures as follows, omitting caption:
"George W. Crowley, prosecuting attorney within and
for Ray county, Missouri, informs the court that John
Stebbins and William Evans on the 15th day of Octo-
ber, 1903, at Ray county, Missouri, in and upon Wil-
liam M. Hill, unlawfully and feloniously did make an
assault and $4.90 lawful money of the United States
of America of the value of $4.90, of the money and per-
sonal property of the said Wm. M. Hill, unlawfully and
feloniously did rob, steal, take and carry away; against
the peace and dignity of the State." The information
was duly verified as the law directs.

The defendants were arrested on the same day and
duly arraigned and entered a plea of guilty, which was
subsequently withdrawn, and a plea of not guilty en-
tered.

A severance was granted, and the defendant John Stebbins was placed upon his trial before a jury, and was convicted, and his punishment assessed at five years in the penitentiary. From the sentence on this verdict the defendant appealed to this court.

The evidence tends to show that William Hill, at the time mentioned in the information, was a resident of Caldwell county, and came to Richmond, Missouri, on the 15th of October, 1903, reaching there about five o'clock in the afternoon. The evidence tends to show that he had ten dollars when he left home that day, out of which he paid his railroad fare from Cowgill to Lawson, fifty-five cents, and from Lawson to Richmond, sixty cents, and that he bought his dinner at Lawson. Somewhere about six o'clock that evening he went to a saloon known as the "Twin Hells," and while there he met the defendant Stebbins, who after taking a drink at Hill's expense, suggested that Hill treat one Evans, a friend of Stebbins, which Hill declined to do. After visiting several saloons, at each of which Evans would generally turn up, Hill and the defendant Stebbins visited a house known as "Pearl's." Here again Evans appeared, and after staying there for something like an hour and drinking more beer, about two bottles, Hill and the defendant Stebbins started back to town. Hill testified that after they had proceeded a short distance Stebbins made a demand upon him for two dollars, which Hill declined to give him. Evans appeared on the scene about this time and upon Hill refusing to pay Stebbins, "the lie" was passed between them and a fight ensued. Hill testified that he was struck in the face and his eye blackened and he was knocked down, and that Stebbins or Evans, he did not know which, took his pocket book out of his left pants pocket and about five dollars. The marshal and night watchman testified that they saw Stebbins, Hill and Evans together on the street that night and that they were all drinking. Further evidence shows that they had sev-

eral drinks from the time Stebbins first accosted Hill
in the saloon until Hill reported to the police officers
about midnight that he had been robbed. After they
were arrested Stebbins and Evans were taken to the
office of the prosecuting attorney, and Stebbins dic-
tated a statement which is follows: ''I, Johnnie Steb-
bins, of my own free will and accord make the follow-
ing statement of the way in which I and William Ev-
ans robbed Wm. M. Hill. I have first been informed
by the prosecuting attorney that the statement I am
about to make will be used against me. On the 15th
day of October, 1903, in Richmond, Ray county, Mis-
souri, I and William Evans started out together after
supper, and after awhile we separated. I met Wil-
liam M. Hill and he paid for the beer. We went up
stairs to see a girl. We then went to Lela's. We then
went to the sump and got a beer. Evans joined us
there. We all three went to Pearl Salmon's and stayed
there about an hour. Hill started away by himself.
Wm. Evans and I went out after him. Evans said,
'Come on Skimmer, let's go.' After we crossed the
bridge we overtook Hill. I asked Hill to loan me two
dollars. Evans told me we had as well have some
money out of Hill as not, and punched me with his el-
bow. The next thing Hill was down and I took hold
of Hill's arms and held him and Evans tore his pants
and took his pocket book, and we left Hill and came up
town and went to Hammer's saloon and divided the
money, and each got $2.45 apiece and Evans took my
knife and cut the pocket book in two and threw it away.
I am twenty-four years of age.'' Signed, ''John Steb-
bins.'' Attested by C. M. Bull and Elmer Cates.

Charles M. Bull testified he was deputy constable
and deputy sheriff at the time, and assisted in the ar-
.rest of Evans and the defendant Stebbins. They made
the arrest about one o'clock in the night. Hill identi-
fied Evans and Stebbins as the parties who robbed him.
He testified that he found the pocket book which Hill

identified as his, between Hammer's saloon and the Richmond Hotel about thirty feet east of the back end of the saloon, about daylight the next morning; that he had gone there to look for it, because that was where Stebbins said they had thrown it.

The bartender at Hammer's saloon testified that the defendant and Evans came into the saloon that night about 11 o'clock and went into the wine room and ordered some beer for which Stebbins paid; they drank a glass apiece. That they left the saloon by the back door. Bull testified further that the defendant said the purse had been cut in two; that he and Evans went into the wine room of Hammer's saloon and divided the money they had taken from Hill. He testified that at the time defendant made the statement in the prosecuting attorney's office, he had been drinking and was pretty drunk, both he and Evans, but that the defendant did not seem to be too drunk to know what he was talking about. Evans staggered some, defendant did not; that no promises were held out to Stebbins to get him to make the statement and no threats were made and he was told that what he might say would be used against him. The statement was made out in the presence of this witness and signed by the defendant, and it was read over to him, and that he said that it was true.

Evans did not make a statement.

On the part of the defendant, he testified in his own behalf that he had lived in Richmond since he was a child three years old, that his business was mining coal; he lived with his mother and father; that he was a single man, but had been married once. Stated that he met Hill, the prosecutor, on the night of the 15th of October in the saloon; that Hill invited him to take a drink; they went out and went into Bohannon's saloon and Hill called for two beers; that Evans came in while they were drinking, and he told Hill that Evans was a friend of his, and asked him to invite Evans to take

a drink; Hill said no, he would buy his own drinks; that he did not have more than a dime to buy a drink; they went out of the saloon and Hill said he wanted to see Joe Farrar to borrow some money from him; before he got down there he stopped in front of Hammer's saloon, pulled out his pocket book, said it was no good and asked defendant for a knife which he gave him, and he started to cut his hat, and he threw the pocket book out into the street. Hill promised the defendant a dollar, and the defendant said, "I thought you were broke," to which Hill answered "I am, I will go down the street apiece and get some money from Joe Farrar." They then went over to "Pearl's" and sat there awhile smoking and talking, and Hill said, "let's go home," and I said to Billy Evans, "Come on, we will all go together." On the way up town he asked Hill where the dollar was that he had promised him, and he denied promising him a dollar, and then they got into a scuffle; that the defendant borrowed a dollar from Evans that night and he paid for the beer at Hammer's out of that dollar. That he was arrested and taken up to Mr. Crowley's office and that Mr. Crowley got to writing on a piece of paper, and told me to sign it; that I would come out all right; that it would not be over $7.50, and I would come out all right. I told him all right. They took me to the calaboose and Evans to the jail, that night. That is all I know about it; that when he signed the paper he understood the charge would be for fighting and disturbing the peace. That he did not understand that he was confessing that he was guilty of highway robbery. He denied that he took any money from Hill when they had the fight. That Hill threatened them that night after the fight, that he was going to fix them.

Evans testified in behalf of the defendant and corroborated his story as to the fight about the dollar which defendant claimed Hill promised to give him.

Various witnesses testified that defendant's gen-

eral reputation as an honest, law-abiding citizen in Richmond was good. His mother also testified that when the defendant was about two and a half years old he fell out of a door and was rendered unconscious for fifteen or twenty minutes, and about three days after that had a convulsion, and when he got up to be a boy about eight or nine years old she and her husband noticed that he was not altogether right, they had to watch him and take care of him; he was not capable of doing any business; that when he was intoxicated his mind was not in a condition to understand the result of his acts.

Various errors are assigned for the reversal of this judgment and they will be noted in the order of their assignment.

I. It is insisted that the first instruction given on behalf of the State is erroneous and does not declare the law relating to robbery in the first degree.

The contention of the learned counsel for the defendant is that the words "and find that the same was taken" should have followed the words "value whatever." This objection to the instruction ignores the fact that the jury was expressly required to find that the defendant "took" money from the person of Wm. M. Hill, the prosecutor, and that the same was the money and personal property of said Hill; that the defendant took the same by force and violence to the person of said Hill with the unlawful and fraudulent intention of depriving said Hill of the ownership thereof, and by converting the same to defendant's use. The instruction required the jury to find all the elements of robbery in the first degree, and is not fairly open to the criticism made upon it.

II. The court did not err in instructing the jury that drunkenness could not justify, excuse or mitigate the offense of the defendant.

In introducing evidence as to the intoxication of

the defendant on that night counsel for the defendant expressly disclaimed any effort to show that the defendant was insane. Having succeeded in getting the evidence of drunkenness before the jury it was the duty of the court to advise the jury what consideration they should give to that evidence.

III. Error is predicated on the seventh instruction given for the State. That instruction was in the following words:

"With reference to the paper offered in evidence purporting to be a confession of the defendant of the commission of the crime charged against him in the information, the court instructs the jury that it is a rule of law founded in reason that a confession of a defendant, when voluntarily made, is evidence against him, because common experience proves that a man will not, without motive for so doing, confess facts to his disadvantage unless they are true. Such confessions, however, should be strengthened and supported by facts and circumstances corroborative of their truth; and in this case if the jury believes from the evidence that the defendant made such alleged confession to the prosecuting attorney and other officers having him in custody and that the same was freely and voluntarily made, then you should take such confession into consideration in making up your verdict. On the other hand, if you believe that at the time said alleged confession was made the defendant did not have sufficient mind or memory to comprehend what he was saying or doing, whether such confession was the result of intoxication or weakness of mind or both, or that the same was made by inducements held out to him, or promises which operated upon the mind of the defendant in the hope of escaping punishment, or any other inducement amounting to threats, fears, or promises, and that from such inducements the de-

fendant made said alleged confession, the jury should disregard it in making up their verdict."

In connection with this objection to this instruction counsel earnestly insists that the alleged confession in writing was erroneously admitted in evidence. Indeed, the admissibility of this confession is the most important question in the case.

Whatever may be the rule in other jurisdictions, it is now the settled law of this State that it is the duty of the court to determine as a preliminary question whether the confession was voluntary before permitting it to go the jury. [State v. Patterson, 73 Mo. 695; State v. Hopkirk, 84 Mo. 278.]

Prima facie the confession was admissible, and unless it was shown to have been obtained by promises of clemency should have been received in evidence; but it is urged that the defendant testified that he was induced to make such statement or confession on account of statements of the prosecuting attorney that he would only be prosecuted for drunkenness and fighting, and that if he would tell the truth about it he would get off for a fine of $7.50. The trial court pursued the approved course in making the preliminary investigation of the circumstances in which the confession was made before permitting it to go the jury. It was ruled in State v. Jones, 171 Mo. 1. c. 406, that the fact that the defendant testified that he made the confession under a promise of discharge, or through fear of a mob, did not overcome the prima facie case, and the testimony of the officers. We are satisfied that ruling was correct. Otherwise, it matters not how clear it might appear to the trial court that no improper inducements were held out to obtain the confession, all that would be necessary to exclude it would be for the defendant to take the stand and testify that he was induced to make it through fear or hope of clemency held out to him. We think the rule announced in State v. Brennan, 164 Mo. 510, to the effect that it is the province of the

court to determine in the first instance the competency of the evidence offered, but it is the function of the jury under our Constitution and laws to pass finally upon its weight and credibility, is correct.

In State v. Hopkirk, 84 Mo. 284, this court, through SHERWOOD, J., said: "The preliminary question of the admissibility of confessions, is one which belongs alone to the trial courts, and unless it be made plain that manifest error has been committed in this regard, the admission of such confessions cannot be held reversible error by this court." Now, in this case while it is true the defendant testified to facts and circumstances from which it might be inferred that he did not understand the consequence of signing the paper which was introduced in evidence against him, yet the State's witnesses testified that he talked intelligently and did know what he was saying and doing at the time, and that he himself dictated the statement in their presence and that the same was written down by the prosecuting attorney also in their presence, and was read over to him and he signed it and he said it was all right.

Under these circumstances we think the confession was properly admitted in evidence, and it was for the jury to say whether the testimony of the State's witnesses was true on the subject of obtaining the confession or whether the testimony of the defendant was correct. [State v. Moore, 160 Mo. l. c. 460.]

Having admitted the confession, instruction numbered seven was all that could be desired by the defendant. By it, the jury were left free to find whether this confession was freely and voluntarily made, or whether the defendant had sufficient mind and memory to comprehend what he was saying and doing at the time, or whether it was obtained by inducements held out to him of escaping punishment. While the confession was not rendered inadmissible by the fact that the prosecuting attorney overstepped the bounds of

propriety in having the prisoner brought to his office and then and there inquiring of him as to his connection with the alleged robbery, we feel constrained to again condemn this practice, as was done by this court in State v. Brooks, 92 Mo. l. c. 577. No person under our laws can be compelled to testify against himself in any criminal prosecution, and a proper appreciation of the rights of an accused forbids the methods resorted to in this case to obtain the confession.

IV. It was in the discretion of the court to require the jury to be withdrawn during the preliminary hearing of the evidence as to the admissibility of the confession, and it is clear that no reversible error was committed in not having sent the jury out while this evidence was being heard. No request of that kind was made by the defendant and no objection to the jury remaining in the court room was made. The point is not before the court for review.

V. As to the other instructions, they fully cover all the law of the case and were especially liberal to the defendant.

We have carefully noted all the assignments of error and we find no ground for reversing the judgment, and it is accordingly affirmed.

*Fox, J.,* concurs; *Burgess, P. J.,* absent.