[Crim. No. 1147.  In Bank.—January 10, 1905.]

THE PEOPLE, Respondent, v. ALEX. J. THOMSON, Appellant.

CRIMINAL LAW—MURDER—SELF-DEFENSE—ACTING UPON APPEARANCES—INSTRUCTIONS—ERROR—INCORRECT PROVISO—CIRCUMSPECTION—SUDDEN QUARREL—MANSLAUGHTER.—Upon a prosecution for murder, where self-defense was relied upon, and the evidence was such that the claim of self-defense arising out of a sudden quarrel rested largely upon the right of the defendant to act upon appearances, he was entitled to clear and unequivocal instructions upon that subject. It was prejudicial error to refuse a requested instruction which, with an immaterial omission, was a correct exposition of the law upon the subject of appearances, and in its place to give

practically the same instruction, with the incorrect proviso, that "the killing must have been done with due caution and circumspection, and not in a sudden quarrel or heat of passion," else "the defendant is guilty of manslaughter."

Id.—Right of Killing in Self-Defense.—If the appearances are such as to justify a killing in self-defense, the defendant is not required to exercise any due care or circumspection in the killing; and the killing in self-defense may be justified, notwithstanding it was done in a sudden quarrel, whether the quarrel may arise out of an assault or consist of a mere altercation of words.

Id.—General Instruction as to Distrust of "Witnesses"—Distrust of "Dying Declaration"—Erroneous Refusal of Special Request.—A general instruction at the request of the prosecution as to the distrust of any "witness" whose testimony has been admitted, if the jury believed him willfully false in one part of his testimony, would not be construed by the jury to include a "dying declaration" of the deceased, who was not a "witness" on the trial. But the jury are entitled to distrust such declaration, on the same principle upon which a witness would be distrusted, and it was error to refuse a special instruction requested by the defendant that if they believed that the deceased was willfully false in one part of his declaration he should be distrusted in other parts, and that under such circumstances they would be entitled to disregard and cast aside the entire declaration.

Id.—Instruction as to Dying Declaration—Invasion of Province of Jury.—An instruction declaring that the dying declaration of the deceased has been received by the court as testimony, and is to be considered by the jury as testimony in the case, invades the province of the jury, who have the right, notwithstanding the preliminary proof, to reject the declaration if they believe it was not made under the sense of impending death.

Id.—Instructions Properly Refused.—Argumentative instructions and instructions fairly covered by the charge of the court and an instruction assuming a controverted fact were properly refused.

Id.—Evidence—Admissions by Deceased Prior to Affray.—The court did not err in excluding immaterial evidence offered to show admissions made by deceased prior to the affray, concerning the terms of an agreement between the deceased and the defendant, about which a dispute arose between them. Such evidence was not admissible to contradict declarations of the deceased which were ruled out.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

H. C. Lillie, for Appellant.

U. S. Webb, Attorney-General, J. C. Daly, Deputy Attorney-General, and Daniel McFadzean, District Attorney, for Respondent.

ANGELLOTTI, J.—The defendant was convicted of the crime of murder of the second degree, and adjudged to suffer imprisonment for eighteen years. He appeals from such judgment and from an order denying his motion for a new trial.

1. The killing of the deceased by the defendant was admitted, but it was claimed by the defendant that such killing was done in necessary self-defense. The trouble between the parties grew out of a difference as to the price agreed to be paid by the deceased to defendant for the hire of two mules. On the day of the mortal affray the deceased delivered the mules at defendant's residence, and was about leaving, when an altercation commenced as to the amount of money due defendant from the deceased for the hire thereof. There was a quarrel, the evidence tending to show the use of vigorous and profane language by the parties, and the quarrel culminated in the shooting of deceased by defendant. So far as appears, the deceased was not armed. Defendant's claim was that deceased, who was some twelve or fifteen feet from him at the time of the shooting, used such language and made such motions as to indicate that he was about to draw and fire a pistol, and that he believed and was reasonably justified in believing that he was in immediate danger of death, or great bodily harm, at the hands of deceased, and that it was necessary for him to shoot deceased to save himself therefrom.

The defendant was a cripple, having a cork leg. There was much evidence tending to show that the reputation of deceased for peace and quiet was bad, and that this was known to defendant. In fact, the prosecution made no attempt to rebut the evidence introduced by defendant upon this point. It was further shown that the deceased generally carried a pistol, and that this was known to defendant. There was also testimony to the effect that shortly before this time, the deceased, in conversation with defendant, pointed to a man with whom he had previously quarreled, and said, ''I horse-

whipped him once; the next man I have any words with I am going to fix him," and that at the time of the shooting, when he made a motion indicating that he was about to draw a weapon, he said to defendant, "You are in for it," or "We are in for it."

There being no evidence to clearly show that the deceased was actually armed at the moment of the difficulty, and consequently that there was actual danger to defendant at the hands of deceased, the defendant's claim of killing in self-defense rested largely, if not entirely, upon his right to act upon appearances. The evidence was of such a nature as to entitle defendant to clear and unequivocal instructions upon this subject. Under these circumstances, the defendant requested the following instruction, viz.: "The defendant was entitled to act upon appearances, and if the language and conduct of the deceased was such as to induce in the mind of a reasonable man, under all the circumstances then existing and viewed from the standpoint of the defendant, that death or great bodily harm was about to be inflicted by deceased upon the defendant, it does not matter if such danger was real, or was only apparent; and if defendant acted in self-defense from real and honest convictions as to the character of the danger, induced by the existence of reasonable circumstances, he should be acquitted, even though he was mistaken as to the extent of the danger."

This requested instruction, except for the omission of the words "a fear" or "a belief" before the words "that death or great bodily harm," which omission is immaterial, was a correct exposition of the law upon the subject of appearances. The court refused to give it as requested, and in its place gave practically the same instruction, with this proviso, viz.: "But the killing must have been done with due caution and circumspection, and not in a sudden quarrel or heat of passion. For if the killing, under such circumstances, was done without due caution and circumspection, or was done in a sudden quarrel or heat of passion, then the defendant is guilty of manslaughter." We cannot understand the object of this addition to the requested instruction, and it certainly does not correctly state the law relative to appearances that will justify a homicide. The effect thereof was not only that the requested instruction was rendered ineffectual, but the

jury were plainly and unequivocally told that the defendant
was entitled to act upon appearances, and could be acquitted
upon the ground of self-defense where there was, in fact, no
actual danger, only in the event that the *killing* was "done
with due caution and circumspection and not in a sudden
quarrel or heat of passion."

Whatever may be meant by saying that a man must kill
another in self-defense "with due caution and circumspec-
tion," there is no such limitation upon the right of self-
defense. If the appearances are such as to justify a reason-
able man in believing that it is necessary to instantly kill
another in order to save himself from death or great bodily
injury, and he does so believe, he is not required to exercise
any "due care" or "circumspection" as to the manner of
killing. The words "due caution and circumspection" were
undoubtedly taken from our code definition of involuntary
manslaughter, which was not, under the evidence, an element
in the case. Under section 192 of the Penal Code, where a
lawful *act* which might produce death is done without due
caution and circumspection, and the death of another is
caused thereby, involutary manslaughter is committed. Used
in connection with and as a limitation upon the right of one
acting upon appearances to kill in self-defense, the phrase
in question introduced an element not recognized by the law
upon that subject.

Nor is it true that a man may not *in* a sudden quarrel be
justified in killing another in self-defense. It is obvious that
where a sudden quarrel has commenced, and is in progress
between the parties, one of the parties may assail the other
under such circumstances as to make it absolutely necessary
for the other to kill in self-defense, or, being the aggressor,
may so conduct himself as to justify the other as a reasonable
man in believing that it is necessary to so do in order to save
himself from death or great bodily injury. In either event,
the mere fact that the parties are engaged in a sudden quarrel,
which may be a mere altercation of words, cannot deprive one
of the right to defend himself against the real or apparent
assailant. In the case at bar, the parties were admittedly
engaged in such a sudden quarrel, and the effect of this in-
struction was, that the jury were told that the rule as to the
right of one to act upon appearances was not applicable to the

case, or, in other words, that the defendant here was not justi-
fied in acting upon appearances.

The action of the court in the matter of this instruction
constituted error, which we cannot say was without substan-
tial prejudice to defendant's cause. The effect thereof was
not obviated by the general abstract instruction given by the.
court upon the subject of self-defense.

2. The shooting was done on the thirtieth day of December,
1902, and the deceased died on February 8, 1903. On Febru-
ary 6, 1903, he made what was claimed to be a dying declara-
tion, and this was admitted in evidence as a dying declaration.

It is not claimed that the preliminary evidence as to the
circumstances under which the statement was made was not
sufficient to warrant the court in admitting the same in evi-
dence, but it is claimed that the trial court erred in giving a
certain instruction in regard thereto and in refusing to give
others.

This dying declaration was most important to the prosecu-
tion. All the eye-witnesses of the affray were members of the
family of defendant, and their testimony tended to corrob-
orate his statement. It was upon the dying declaration and
the location of the fatal wound that the prosecution was com-
pelled to principally rely.

The court (at the request of the prosecution, according to
the record) instructed the jury that if they believed that "any
witness" whose testimony had been admitted was false in or
part of his testimony, then such witness should be distrus
in the other parts of his testimony, and that under such c
cumstances they might reject and disregard his entire testi-
mony.

It further instructed as follows: "The dying declaration
of the deceased, T. B. Slaughter, has been received by the
court as testimony and is to be considered by you as testimony
in this case. Dying declarations are received by courts as
evidence from necessity. There is no authority in law for
administering an oath to the person making such declaration.
The sense of impending death dispenses with the necessity for
an oath." This was the only instruction given regarding the
dying declaration.

The court refused to instruct the jury that if they believed
that the deceased was willfully false in one part of his declara-

tion, then he should be distrusted in other parts, and that under such circumstances they would be entitled to disregard and cast aside the entire declaration.

We are of the opinion that the instructions given are susceptible of the construction that a dying declaration stands upon a higher plane than that occupied by the testimony of the ordinary witness, and that the testimony of a mere witness may be distrusted and disregarded where a dying declaration may not be so rejected. A person who has made a dying declaration which is admitted on a trial is not a "witness" on the trial, either within the definition of our code (Code Civ. Proc., sec. 1878), or within the common acceptation of the word "witness," and the jury might well have understood that the instruction as to their right to reject and disregard the testimony of "any witness" referred solely to those whose testimony had been received under oath on the trial. Particularly was this so when the separate and distinct instruction was given as to the dying declaration.

It is of course settled law that the credibility or degree of weight which shall be given to a dying declaration is solely a question for the jury, that they may apply the same tests and principles in determining its truth that they apply in the consideration of the evidence of the witnesses, and that if they believe from the evidence that the person making the declaration was willfully false in a material part thereof, they may reject and disregard his entire declaration. We are of the opinion that the court should have made this clear by the instructions. Having given an instruction as to the conditions upon which the jury might reject and disregard the testimony of other witnesses, it should, when requested by defendant, have done at least as much as to the dying declaration, and given the twenty-fifth requested instruction.

We are of the opinion, too, that the one instruction given upon the subject of the dying declaration to some extent invaded the province of the jury. It was practically declared thereby that the declaration admitted was a *dying declaration,*—i. e that it was made by deceased under a sense of impending death, and that the jury must accept it as having been so made.

It is of course for the court to determine, upon preliminary proof addressed to it, as to whether a declaration made by a

deceased was so made under a sense of impending death, as to be competent evidence, this duty of the court being placed, according to Mr. Greenleaf, "on the same ground with the preliminary proof of documents and of the competency of witnesses" (Greenleaf on Evidence, sec. 161), but the determination by the court that it was so made cannot in the slightest degree impair the power of the jury to determine as to its credibility. As Greenleaf says in the section already cited, "But after the evidence is admitted, its credibility is entirely within the province of the jury, who, of course, are at liberty to weigh all the circumstances under which the declarations were made, *including those already proved to the judge,* and to give the testimony only such credit as, upon the whole, they may think it deserves."

Whether the declaration was in fact made under a sense of impending death, is a question that most materially affects the question as to its credibility, and the determination of the court thereon is not conclusive upon the jury. They have the right, in considering whether they shall accept the declaration as a correct statement, to determine for themselves whether the declarant was *in extremis,* and fully convinced of that fact when making the declaration, and are at liberty to disregard it if not satisfied that it was made under a sense of impending death.

This appears to be settled by the great weight of authority. This court, speaking through the chief justice, said in *People* v. *Amaya,* 134 Cal. 531, that an instruction to the effect that although it was the province of the court to determine in the first instance the admissibility of the dying declaration, the jury were not bound by the fact of its admission to conclude that it was made in view of impending death, etc., but that it was for them to determine whether it was so made, and whether it had been correctly reported, was correct.

In *State* v. *Reed,* 53 Kan. 767,[1] it was held that an instruction to the effect that such a declaration was made under a sense of impending death, excluded from the jury, in passing on the credibility of the declaration, the question as to whether it was so made, and was erroneous, it being declared that in passing on the credibility of the statement they were entitled to consider whether as a matter of fact deceased had lost all

[1] 42 Am. St. Rep. 322.

hope of recovery at the time he made the same. (See, also, *State* v. *Phillips,* 118 Iowa, 660, and cases there cited; McClain on Criminal Law, secs. 430, 431; *Starkey* v. *People,* 17 Ill. 17; *North* v. *People,* 139 Ill. 81, 102; *State* v. *Banister,* 35 S. C. 290, 296; *Walker* v. *State,* 37 Tex. 366, 386; *Commonwealth* v. *Brewer,* 164 Mass. 577; *State* v. *Swift,* 57 Conn. 496; 10·Am. & Eng. Ency. of Law, 2d ed., pp. 385, 386.)

Inasmuch as the declaration of the deceased is competent evidence only when made under the sense of impending death, and because it was so made, it would seem to logically follow that the jury should give it no consideration whatever, unless they are satisfied that it was made by the deceased under such sense of impending death. It is a rule of evidence that such a declaration can be considered only in that event, and while the court must of necessity preliminarily determine the question of fact essential to the admission of the declaration in evidence, the rule of evidence still remains for the guidance of the jury, and as the jury must exercise their power of judging of the effect of the evidence in subordination to the rules of evidence, it would seem to be proper to inform the jury of such rule and of their duties in regard thereto. The doctrine in such matters is stated in *Commonwealth* v. *Brewer,* 164 Mass. 577, as follows: "When the admissibility of evidence depends upon a collateral fact, the regular course is for the judge to pass upon the fact in the first instance, and then, if he admits the evidence, to instruct the jury to exclude it if they should be of different opinion on the preliminary matter." (See, also, *Jones* v. *State,* 71 Ind. 66.) The case is analogous to that where it is sought to introduce a confession of a defendant in evidence, and the court is called upon to preliminarily pass upon the question of fact as to whether the confession was freely and voluntarily made. (*State* v. *Banister,* 35 S. C. 290.) In such a case, it is for the jury to ultimately determine whether it was so made, and therefore entitled to consideration. (*People* v. *Oliveria,* 127 Cal. 376, 381.)

Upon a retrial proper instructions along the lines discussed will doubtless be given. Many of the instructions requested upon this branch of the case were objectionable, some of them being purely argumentative, and were properly refused.

3. Except upon the question as to the right of the defendant

to act upon appearances, which has already been noticed, the instructions upon the law of self-defense fairly covered the case, and included substantially all such portion of defendant's requested instructions upon the subject as he was entitled to. Defendant's requested instructions as to the object of the evidence offered to show the bad reputation of the deceased for peace and quiet were objectionable, in assuming that defendant believed that it was necessary to kill in self-defense. Doubtless if proper instructions upon this subject are asked they will be given.

4. In all other respects defendant's requested instructions, so far as proper, were fairly covered by the charge of the court.

5. We are of the opinion that the court did not err in excluding the evidence offered to show certain admissions made by deceased prior to the affray, concerning the terms of the agreement between himself and defendant as to the mules. There was nothing therein tending in the slightest degree to show the mental attitude of the parties toward each other at the time of the affray—nothing at all material to the question as to who was the aggressor therein. *People* v. *Hecker,* 109 Cal. 451, is clearly inapplicable.

The argument that the evidence tended to contradict certain matters improperly contained in the alleged dying declaration of deceased is overcome by the fact that the court ruled such matters out in admitting the declaration, and that the same were finally read in evidence only because the defendant insisted thereon. We are unable to perceive that the district attorney was guilty of any misconduct in argument that could have prejudicially affected defendant's cause.

This disposes of all the points discussed in the briefs.

For the reasons given the judgment and order are reversed and the cause remanded for further proceedings.

Shaw, J., McFarland, J., Van Dyke, J., Henshaw, J., and Lorigan, J., concurred.