THE STATE v. T. E. CUSTER, Appellant.—80 S. W. (2d) 176.

Division Two, March 5, 1935.

*G. W. Thornberry* for appellant.

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

COOLEY, C.—Charged by information with murder in the first degree for the killing of E. C. Costlow, defendant was tried, convicted of murder in the second degree, sentenced to ten years' imprisonment in accordance with the verdict and has appealed.

At the time of the homicide the defendant, a man about eighty years of age, lived with his elderly and partially blind wife on a

small farm, which they did not own. They were in poor circumstances financially and it appears were occupying the house rather by sufferance of the owner than by right. A short time previously Costlow had leased the premises from the owner. Defendant claimed and introduced some evidence tending to show that Costlow had agreed to let him occupy the house, for a time not definitely shown but apparently at least for such reasonable time as would enable him to make arrangements to move, which arrangements he was making. Costlow lived about a quarter of a mile from the place in question. The State's evidence tends to prove that on the morning of April 1, 1933, Costlow, with his younger brother Carl, aged about fourteen, went in a wagon to the place where defendant lived; that defendant's cow was in the potato patch and Costlow drove her out and through a gap in the fence into the road; that as Costlow was coming back toward his wagon the defendant went to his woodpile and got his double-barreled shotgun which had been there partially concealed under some wood, and shot Costlow twice; that at the first shot Costlow screamed and fell, then got up and was shot again; that there were no words between defendant and Costlow prior to the shooting. The State's principal witness was deceased's brother Carl, who was present when the homicide occurred. The State's evidence makes a case of murder.

Defendant's evidence tended to show that there had been disagreement and some verbal clashes between him and Costlow after Costlow had leased the premises and prior to the day of the shooting; that Costlow had threatened forcibly to eject him and his wife from the premises "throw them out;" that on the occasion in question Costlow repeated his former threats and that when the shots were fired Costlow was advancing toward him in a threatening manner with, as he thought, something in his hand, and he fired in self-defense. Further facts will be stated in connection with points upon which they bear.

I. Appellant has filed no brief. In his motion for new trial he complains of certain alleged errors at the trial. First it is contended that the court erred in admitting the alleged dying declaration of the deceased because not sufficiently shown to have been made in belief of impending death.

Costlow was shot at about nine o'clock in the morning. He was taken to his home and a doctor was called. The doctor testified that when he arrived Costlow was suffering severely; that there were a good many shot holes in his side, the muscles in his arm and leg were "pretty full of shot," there was bleeding in the muscles and the leg was "swollen up pretty bad." "And there were shot in his abdomen, on his hip; and he was in a state of shock when I got there. That is the shock was bad; and he was weak, sweating,

pulse very bad; temperature away down below normal from the hemorrhage.'' It appears the hemorrhage was mostly internal. He testified that deceased's wounds were dangerous and likely to produce death; that the wounds in the leg were such that it was a fifty-fifty chance they alone would cause death; that he ''used antiseptics on him, got him cleaned up, dressed and fixed up comfortably,'' and gave him a hypodermic to ease the pain and bring him out of the shock. It does not appear whether or not he informed Costlow of the seriousness of his condition. He left about noon and did not again see Costlow.

About two o'clock that afternoon the sheriff, Seth Tuttle, came to see Costlow. When called as a witness Tuttle was first examined before the court in the absence of the jury and testified: ''He spoke to me; said 'Hello, Seth.' And I said 'How are you?' And he said 'He got me; I am all in.' I said 'Are you suffering much?' and he said, yes that he was;'' that Costlow then made a statement as to how the shooting happened. He testified that Costlow said nothing to him as to whether he expected to die or had hopes of recovery—nothing along that line except what is above set out. The jury was then recalled and the above testimony together with Costlow's statement as to the circumstances of the shooting was detailed to the jury. The statement corroborated the testimony of Carl Costlow, contradicted the defendant's testimony tending to show self-defense, and tended to show a killing under circumstances constituting murder. Costlow died about four o'clock the morning after he was shot, some fourteen hours after making the statement testified to by Tuttle.

A dying declaration, in order to be admissible as such, must have been made in the belief on the part of the declarant of impending death, after hope of recovery has been abandoned. Whether or not it was so made is a question to be determined by the court as a preliminary question in the absence of the jury before it is admitted in evidence. In so determining the declarant's state of mind, the circumstances under which the statement was made may and should be considered and it is the impression of almost immediate death and not the rapid succession of death that determines the admissibility of the statement. [State v. Anderson (Mo.), 34 S. W. (2d) 25, and cases cited; State v. Barnes (Mo.), 204 S. W. 264, and cases cited.] In State v. Kelleher, 201 Mo. 614, 100 S. W. 470, the deceased, soon after he was shot, said: ''I am a croppy, I am a dead one; there ain't nothing to it.'' At the hospital when his dying declaration was about to be taken he said that it was all off with him. The court held the statements, taken in connection with the attending circumstances, the condition of the wound and the declarant's state of mind from the first, sufficient to show that

518

the declaration was made under the impression of almost immediate dissolution.

In State v. Dipley, 242 Mo. 461, 147 S. W. 111, the deceased was shot through the lung, causing the pleural cavity to fill with blood. When wounded he ran to his bed and did not leave it until removed by others. He was suffering much pain which the doctors were unable to relieve. He said he could tell from his breathing that he was shot through the lung and repeatedly stated: ''I guess they have got me.'' It was held that his statements, in connection with all the circumstances, were sufficient to show that he believed he was fatally wounded and was conscious of the near approach of death, and that his dying declaration was properly admitted.

In the instant case the State's evidence was that deceased fell when he was shot and had to be carried to his home. When the doctor arrived he was suffering severely and was in a very bad condition. The doctor's ministrations failed to relieve his suffering, as witness the statement to Tuttle that he was then still suffering greatly. His expression: ''He got me; I am all in,'' must be interpreted in the light of the circumstances and his condition at the time the words were spoken. While the evidence offered in this case as foundation for the admission of the dying declaration does not seem to us quite as strong as in the cases above cited and others which we have examined, we are inclined to think it was sufficient to justify admission of the declaration in evidence.

II. Complaint is made of the following instruction, No. 12, on the subject of dying declaration, given by the court at the request of the State:

''The Court instructs the Jury that if you believe and find from the evidence that E. C. Costlow, a short time before he died, made any statement relating to the assault alleged to have been made upon him on the 1st day of April, 1933, as to the parties who made said assault and the manner in which said assault was made, *you will take and consider such statement as the dying declaration of the said E. C. Costlow;* but because it is a dying declaration you are not necessarily bound to believe it, but you will give it that weight which you think it ought to have, when considered in connection with all the other facts and circumstances in evidence.'' (Italics ours.)

At the time of admitting the declaration in evidence the court indicated that the jury would ultimately be permitted to determine for themselves whether they believed it to have been made in the belief on the part of the declarant that he was about to die. But the quoted instruction, the only one given on that subject, in effect withdrew that question from the jury's consideration. It tells the jury peremptorily that if they find that the statement in question

was made they will take and consider it as the *dying declaration* of the deceased, thus precluding the jury from considering, in determining the weight and credibility to be given to the deceased's statement, the question of whether or not at the time he made it he believed he was facing death. The effect of the instruction is to make the finding or conclusion reached by the court on the preliminary hearing, had for the purpose of determining the admissibility of the alleged dying declaration, conclusive upon the jury as to the declarant's state of mind at the time the declaration was made. Such we think is not the law.

There is a lack of harmony in the authorities upon this proposition. We find in our own jurisdiction cases which seem to hold that the court's determination of the question, made on the preliminary hearing in determining the question of admissibility of the alleged dying declaration, is conclusive and that the question should not be submitted to the jury. The reasoning of other cases seems to point to a different conclusion.

In State v. Burns, 33 Mo. 483, the trial court had refused an instruction requested by the defendant to the effect that if the jury believed that the dying declarations introduced had not been made *in extremis* and at a time and under circumstances when the declarant was impressed with the conviction of approaching death they should disregard such declarations. The court said the instruction was properly refused "for it left it to the jury to pass upon the admissibility of the declarations, a·question solely for the consideration of the court and not for the jury."

In State v. Simon, 50 Mo. 370, the question of instructions was not involved but in discussing the question of admissibility of the declarations there offered, under the facts shown, the court said, 50 Mo. l. c. 374:

"The court must decide upon the admissibility of the declarations; and the truth of the facts put in evidence, to show that declarations were made in view of speedy death, is a matter exclusively for the court to determine."

The same thought seems to be suggested in State v. Sexton, 147 Mo. 89, 48 S. W. 452, wherein the court said, 147 Mo. l. c. 102-3:

"Respecting the dying declarations of Stark there was ample evidence upon which the trial court acted in permitting the evidence of such declarations to go to the jury. And it belonged exclusively to the court to determine whether a sufficient basis had been laid for the admission of such declarations. . . . With the point of the admissibility of such declarations a jury has nothing to do, and therefore should not be instructed on that subject."

In State v. Parker, 172 Mo. 191, 203, 72 S. W. 650, an instruction similar to that in the instant case was approved, but without discussion of the precise point we are now considering. [So in State

v. Hendricks, 172 Mo. 654, l. c. 662, 671, 73 S. W. 194.]

In State v. Gore, 292 Mo. 173, 194, 237 S. W. 993, 999, the court, in holding that a certain instruction requested by the defendant had been properly refused, said that it "would have submitted to the jury the question of whether the statement of the deceased is really a dying declaration, and is therefore improper." The instruction is not set out in the opinion and the court makes no further comment on it.

State v. Zorn, 202 Mo. 12, 31 et seq., 100 S. W. 591, apparently approves the doctrine of State v. Burns, and State v. Simon, supra, treating the question as one relating to the *admissibility* of the declaration. In the Zorn case the trial court had given an instruction submitting it to the jury to find that the declaration in question had been made *in extremis* before considering it as a dying declaration. However, in that case the trial court had not first heard the evidence pro and con and determined that the statement in question was a dying declaration and admissible as such, and, as we read the decision, it was chiefly on that ground that the action of the trial court was held to be reversible error.

The above-cited cases apparently are based upon the theory that the determination of the declarant's state of mind, whether or not he believed at the time of making the proffered statement that death was impending, involves only the question of admissibility of the declaration and does not affect the question of the weight, credibility or application thereof, if admitted. To this we cannot agree. Such declarations are received on the ground of necessity and on the principle that they are made in extremity, when the party believes himself at the point of death with hope of recovery gone,—"when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth." [State v. Simon, 50 Mo. l. c. 373.] It is well-nigh universal belief that a statement made under such circumstances is more likely to be the truth than one made when such influence to speak truthfully does not exist. The jury have the sole prerogative and are charged with the duty of determining the credibility and probative value of evidence. The question of whether or not an alleged dying declaration was made in the belief of impending death, whether or not it was in fact a *dying* declaration, is certainly a circumstance, a strong factor, in the determination of the credibility and weight to be given it. If that question is to be conclusively determined by the court the jury would be precluded from considering a question that indubitably affects a matter which they must determine, viz., the weight and credibility to be given to the declaration.

In State v. Gow, 235 Mo. 307, 326, 138 S. W. 648, it is said:

"The competency of a dying declaration is a question for the court, but all the facts and circumstances in connection therewith

are competent evidene to enable the jury to determine the weight and probative force to which the declaration is entitled.''

Such is the general rule. If the jury have no concern with and are not to be permitted to determine for themselves the question of whether or not the declaration was made in the belief on the part of the declarant that death was near, why give to the jury ''all the facts and circumstances in connection therewith.'' It appears to us clear that the jury are concerned with that question and should be allowed to determine it for themselves notwithstanding that the court has previously determined it as a preliminary question for the purpose of ruling upon the admissibility of the declaration. If on such preliminary hearing it appears to the court that the declaration was not made under circumstances constituting it a dying declaration, obviously the jury should not be permitted to hear it. The court should determine the question of admissibility in the absence of the jury but, if admitted, the declaration should go to the jury and be considered with all the attendant facts and circumstances, which necessarily include the question of whether or not it was made under the solemn impression of impending death.

The question is analogous to that involved in the admission of confessions, which are not to be considered unless voluntary. If there is dispute as to whether a confession was voluntarily made it is correct and approved practice for the court, at least if so requested, first to hear evidence of the attending facts and circumstances. But if admitted it goes to the jury with all the attendant facts and circumstances and it is for the jury to determine for themselves whether it was voluntarily made. [See State v. Stebbins, 188 Mo. 387, 87 S. W. 460; State v. McKenzie, 144 Mo. 40, 45 S. W. 1117; State v. Thomas, 250 Mo. 189, 205 et seq., 157 S. W. 330.]

In State v. Peak, 292 Mo. 249, 262, 237 S. W. 466, this court had under consideration an instruction which evidently left it to the jury to determine whether or not a dying declaration had been made under the belief of impending death, and held that it correctly declared the law. The instruction is not set out in the opinion but the court says it ''is in the language employed in a like instruction approved by this court in State v. McMullin, 170 Mo. l. c. 625, 71 S. W. 221.'' The instruction in the McMullin case required the jury to find, among other facts, before treating the declaration there in question as a dying declaration, that at the time of making the declaration the declarant ''had given up all hopes of life and then believed that death was impending and near.'' The court said in the Peak case that the instruction was not ''obnoxious to the criticism that the admissibility of the declarations was left to the jury,'' a statement in which we concur. The court, however, made the further observation ''that the character of the statements as dying declarations was determined by the court, and  .  .  .  the

province of the jury was limited to determining the credit or weight to which the .declarations were entitled." If by the latter statement the court meant only that the character of the statements as dying declarations had been determined by the trial court as a preliminary matter for the purpose of .determining their admissibility, but not with the effect of precluding consideration by the jury of the question of declarant's belief when he made the statements, we agree.

As we stated above, there is a lack of harmony in the authorities on this question. As said by the Iowa Supreme Court in State v. Phillips, 118 Iowa, 660, 1. c. 674, 92 N. W. 876:

"The confusion which is apparent in some of the holdings seems to arise from the fact that courts have at times lost sight of the distinction between the admissibility of evidence and its credibility and application."

Such confusion is revealed by an examination of the many cases cited in the note to Worthington v. State (Md.), 56 L. R. A. 353, at pages 434 et seq. Many of the cases there cited do not deal specifically with the question of whether or not the jury may be permitted to consider the question of the declarant's state of mind at the time he made the declaration, but use language from which it may be inferred that the courts regarded such question as one affecting only the admissibilty of the declaration. Several hold definitely that such question is exclusively for the court and may not be submitted to the jury. The entire subject of dying declarations is treated in said note to Worthington v. State, supra. For supplemental notes in the same series, see State v. Doris, 16 L. R. A. (N. S.) 660, and State v. Valencia, 52 L. R. A. (N. S.) 152. The matter seems to us to be fairly well summed up by the editor of the note to the last-mentioned case, under the caption: "Weight in View of the Circumstances," thus:

"It should be stated *in limine* that the question whether the declarant spoke under a sense of impending death is in some jurisdictions one for the court, and in others one for the jury, . . . but that in all jurisdictions the jury are to consider the weight of the declaration in view of all the circumstances. This, of course, means that the jury are to believe or not, as they see fit, that there was a sense of impending death, and that the difference in the courts is merely one of practice as to instructions, etc., leaving the jury masters of the question whether there was a sense of impending death, as of all other questions of fact in the case."

In People v. Thomson, 145 Cal. 717, 79 Pac. 435, the court held that an instruction which "practically declared" that the declaration which had been admitted "was a *dying declaration;* i. e., that it was made by deceased under a sense of impending death, and that

the jury must accept it as having been so made," invaded the province of the jury. The court, 145 Cal. 1. c. 724, well said:

"Whether the declaration was in fact made under a sense of impending death is a question that most materially affects the question as to its credibility, and the determination of the court thereon is not conclusive upon the jury. They have the right, in considering whether they shall accept the declaration as a correct statement, to determine for themselves whether the declarant was *in extremis* and fully convinced of the fact when making the declaration, and are at liberty to disregard it if not satisfied that it was made under a sense of impending death."

The court further said that the proposition above stated appears to be settled by the great weight of authority, and cites a number of authorities, as does the Iowa case above cited. After extended research and an examination of many authorities we think the weight of authority, in cases where the specific question was considered, does support said proposition.

The view we have expressed on this question finds support in the following: State v. Phillips, supra; People v. Thomson, supra; State v. Doris (Ore.), 94 Pac. 44, 16 L. R. A. (N. S.) 660; State v. Banister, 35 S. C. 290, 14 S. E. 678; Commonwealth v. Brewer, 164 Mass. 577; Dumas v. State, 62 Ga. 58; Campbell v. State, 11 Ga. 353; Commonwealth v. Murray (Pa.), 2 Ashmead, 41; State v. Cameron (Wis.), 2 Chandler, 172; Martin v. State, 17 Ohio Cir. Ct. Rep. 406; Starkey v. People, 17 Ill. 17, approved in North v. People, 139 Ill. 81, 28 N. E. 966; Commonwealth v. Winkelman, 12 Pa. Super. Ct. 497; Jones v. State, 71 Ind. 66; Walker & Black v. State, 37 Tex. 366; 1 McLain on Crim. Law, secs. 430, 431.

For the reasons set forth we hold that the quoted instruction was prejudicially erroneous in telling the jury that if they found that the declaration in question had been made they must take and consider it as the dying declaration of the deceased; and that our prior decisions above referred to, and others of like tenor if there be others, holding or appearing to hold that the preliminary determination by the court of the declarant's state of mind is conclusive upon the jury should no longer be followed on that point. To the extent that such prior decisions conflict with the views herein expressed they are overruled.

III. Complaint is made that Instruction No. 11 does not sufficiently inform the jury as to defendant's "right to defend against an unlawful trespass against his home and his family." The court gave an instruction, No. 6, on defendant's right of self-defense as against an assault upon himself. That instruction is not criticized, Instruction No. 11 reads:

"The court instructs the jury that the law of self-defense applies to a man's relatives and to his home as well as it does to himself."

We think the instruction subject to criticism in that it fails to define the facts necessary to be found in order to justify defendant in shooting in defense of his home or family. In the event of another trial if there is substantial evidence calling for submission of that question an instruction should be given appropriately explaining the facts necessary to be found in order to constitute justification on that theory.

For the error noted in Instruction No. 12, the judgment of the circuit court is reversed and the cause is remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. *Leedy, J.,* dissents; *Tipton, P. J.,* and *Ellison, J.,* concur.