Filed 12/18/14  P. v. Porras CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BRANDON PORRAS,<br><br>    Defendant and Appellant. | D064912<br><br><br>(Super. Ct. Nos. SCS255229<br>SCS264727) |

APPEAL from a judgment of the Superior Court of San Diego County, Edward P. Allard III, Judge.  Affirmed.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General and Barry Carlton, Deputy Attorney General, for Plaintiff and Respondent.

## INTRODUCTION

A jury convicted Brandon Porras of felony assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)).[1] The jury also found true allegations Porras used a deadly weapon (§ 1192.7, subd. (c)(23)) and personally inflicted great bodily injury (§§ 1192.7, subd. (c)(8), 12022.7, subd. (a)). The trial court sentenced Porras to a total term of 14 years in state prison (the middle term of three years, doubled for an admitted strike prior, plus three years for the great bodily injury enhancement and five years for the serious felony prior enhancement).[2] The court ordered him to pay a $280 restitution fine under section 1202.4 along with other court fees.

Porras appeals, contending the trial court erred in denying his motion under section 1118.1 for a judgment of acquittal because there was insufficient evidence in the prosecution's case to support a finding Porras, rather than his brother, Robert Porras, stabbed the victim.[3] He also contends the court violated the ex post facto clause of the United States Constitution when it imposed a $280 restitution fine as opposed to a $240 restitution fine, which was the minimum restitution fine under section 1202.4, subdivision (b)(1) for crimes committed in 2012. We reject both contentions and affirm.

---

[1]    Further statutory references are to the Penal Code unless otherwise stated.

[2]    In case number SCS264727, Porras pled guilty to illegally possessing a razor blade while in custody in county jail (§ 4502, subd. (a)). The court sentenced him to serve one year consecutive to the sentence imposed in case number SCS255229. Porras raises no issues related to case number SCS264727 in this appeal.

[3]    Because Porras and his brother share the same last name, we refer to the brother as Robert for clarity. No disrespect is intended.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2012, Robert was in a relationship with Melissa Dimayuga. Dimayuga previously dated Jimmy Angulo and they had a daughter together. Robert and Angulo were involved in an ongoing feud. They insulted and challenged each other to fight in an exchange of numerous messages.

On March 1, 2012, Angulo and his girlfriend, Sheila Ortegoza, drove in Ortegoza's car to Robert's residence to confront him about disrespectful social media messages Robert had sent to Angulo about Dimayuga and their daughter. When they got to Robert's house, they drove around the block a couple of times. On one trip past the house, Angulo called out to people on the street asking for Robert. Eventually, they stopped in front of Robert's house. Angulo got out of the car and hit a vehicle parked in front of Robert's house with a crow bar several times. When Angulo got back in the car, he said to Ortegoza "Go, Go, Go" and they drove away.

Porras and Robert gave chase in Robert's car. Dimayuga joined the chase in her car. The Porrases and Dimayuga chased Angulo through streets, and on and off the freeway. The pursuit ended in Angulo's neighborhood, at the intersection of Dairy Mart Road and Servando Avenue, when Dimayuga pulled her car in front of Angulo's car and the Porras's car pulled behind Angulo's car, blocking it.

Angulo exited the car and ran toward his residence calling out for his roommate to help. Dimayuga got out of her car, jumped into Ortegoza's car, and began fighting

3

with Ortegoza.  Meanwhile, Robert exited his car and broke the windows out of Ortegoza's car with a bat.

Porras, armed with a knife, chased Angulo on foot.  Angulo turned and saw Porras swinging at him. Angulo fought back unarmed and noticed he had been stabbed right after the confrontation.  Porras walked back toward the three vehicles where Robert was.  Robert asked Porras if he had stabbed Angulo.  Porras replied, "I got him."

In Ortegoza's car, Dimayuga, who was still fighting with Ortegoza, told Robert and Porras "Come get [Ortegoza] too."  Robert grabbed Dimayuga by the hair and pulled her out of Ortegoza's car, telling her to get into her car and to leave.  Porras, Robert, and Dimayuga left the scene in their respective cars.

Ortegoza moved into the driver's seat of her car and began looking for Angulo.  She saw him on the corner of Servando Avenue and Dairy Mart Road.  He looked injured.  She took Angulo to the hospital.  He was transferred to the University of California San Diego Medical Center (UCSD) where he was treated as a trauma patient for major bleeding.

DISCUSSION

I

Porras contends the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence to establish Porras, rather than his brother Robert, was the person who stabbed Angulo.  We disagree.

Section 1118.1 provides:  "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the

4

case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on appeal.  If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

" ' "The standard applied by a trial court in ruling upon a motion for judgment of acquittal pursuant to section 1118.1 is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, 'whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged.' "  [Citation.]  "The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case." [Citations.]  The question 'is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination."  [Citation.] The sufficiency of the evidence is tested at the point the motion is made.  [Citations.] The question is one of law, subject to independent review.' "  (*People v. Maciel* (2013) 57 Cal.4th 482, 522.)

In evaluating a sufficiency of the evidence claim, " 'we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt.  [Citation.]  The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid

5

value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] "Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]" [Citation.] A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the jury's verdict.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Here, the evidence viewed most favorably to the judgment showed Porras chased Angulo after the vehicles came to a stop, the two fought, and Angulo noticed he had been stabbed after the altercation. Afterwards, Angulo heard Porras tell Robert, "I got him." While Porras chased Angulo, Robert broke the windows of Ortegoza's car with a bat.

Angulo's statement to the police to this effect was corroborated by a neighborhood resident who observed the chase. He described a large male chasing a smaller Hispanic male. The larger male was yelling for the smaller male to stop and confront him while the smaller male was screaming to someone else, "Help me. Come and help me." At one point, the larger male pushed the smaller male. The smaller male started running back to Ortegoza's car, but stopped at the sidewalk and bent forward, appearing to be

6

injured. The DNA profile collected from blood spatters on the sidewalk of Servando and the northbound lane of Servando matched Angulo's DNA, supporting the accounts Angulo was stabbed during the foot chase rather than near the cars where Robert was located.

Porras contends Angulo's statements do not constitute sufficient evidence because he gave inconsistent statements. During transport to UCSD, after a paramedic told Angulo he was very sick and could die, Angulo said the person who stabbed him was Robert. Porras contends Angulo's statement in the ambulance should be viewed as a dying declaration and given greater weight than his later testimony identifying Porras. However, "the credibility or degree of weight which shall be given to a dying declaration is solely a question for the jury, . . . they may apply the same tests and principles in determining its truth that they apply in the consideration of the evidence of the witnesses, and . . . if they believe from the evidence that the person making the declaration was willfully false in a material part thereof, they may reject and disregard his entire declaration." (*People v. Thomson* (1905) 145 Cal. 717, 723.)

At the time of trial Angulo testified he could not remember the incident because his memory was foggy. Prior to trial, Angulo told the investigating detective he was not sure he would tell the truth because he did not want to be labeled a snitch.

Even though Angulo initially identified Robert as the perpetrator, Angulo later described the events in detail to the investigating detective and told him Porras was the person who pursued him and he realized he was stabbed after fighting with Porras. Angulo identified Porras in a photographic line up as "the one that stabbed me."

7

Angulo's identification of Porras as the person who stabbed him is consistent with other witness accounts and the physical evidence. It was within the province of the jury to weigh Angulo's statements and determine which version of the truth it deemed most credible. Accordingly, we conclude Porras has not established there was insufficient evidence to present the matter to the jury for its determination. There was substantial evidence to support the verdict.

## II

Porras contends the trial court imposed a $280 restitution fine in violation of the ex post facto clause and the court should remand for imposition of a $240 restitution fine instead. We are not persuaded.

The United States Constitution bars the passage of ex post facto laws by state governments (U.S. Const., art. I, § 10, cl. 1). The California Constitution, article I, section 9 also bars the Legislature from enacting ex post facto laws. The ex post facto analysis is the same under both Constitutions. (See *In re Vicks* (2013) 56 Cal.4th 274, 287.)

"A statute violates the ex post facto clause[s] when, on its face or as applied, it retroactively ' "increase[s] the punishment for criminal acts." ' Thus[,] the prohibition on ex post facto laws prevents the government from changing the punishment for a criminal act after the act has been performed." (*People v. Callejas* (2000) 85 Cal.App.4th 667, 670 (*Callejas*), fns. omitted.) "It is well established that the imposition of restitution fines constitutes punishment, and therefore is subject to the proscriptions of the ex post facto clause." (*People v. Souza* (2012) 54 Cal.4th 90, 143.)

8

At the time Porras committed the offense in March 2012, former section 1202.4, subdivision (b)(1) provided, "[t]he restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, . . . , and not more than ten thousand dollars ($10,000), if the person is convicted of a felony . . . ."  (Stats. 2011, ch. 358, § 1.)[4]

Therefore, under the applicable statute, the minimum restitution fine available to the court at the time Porras committed the offense in 2012 was $240.  When the court imposed Porras's sentence, the minimum threshold had increased to $280.  However, within the range authorized by statute, the trial court has discretion to decide the amount of fine to be imposed and need not provide a statement of reasons on the record.

(§ 1202.4, subds. (b), (d); *People v. Urbano* (2005) 128 Cal.App.4th 396, 406.)[5]

---

[4]     Section 1202.4, subdivision (b)(1) currently provides, "[t]he restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, . . . , and not more than ten thousand dollars ($10,000)."  (Stats. 2012, ch. 868, § 3.)

[5]     Section 1202.4, subdivision (d), provided in March 2012, as it does now, "[i]n setting the amount of the fine pursuant to subdivision (b) in excess of the minimum fine pursuant to paragraph (1) of subdivision (b), the court shall consider any relevant factors, including, but not limited to, the defendant's inability to pay, the seriousness and gravity of the offense and the circumstances of its commission, . . . .  A defendant shall bear the burden of demonstrating his or her inability to pay.  Express findings by the court as to the factors bearing on the amount of the fine shall not be required."  (Compare Stats. 2011, ch. 358, § 1 with Stats. 2012, ch. 868, § 3.)

Contrary to Porras's contention, there is no indication the trial court "wanted to impose the minimum restitution fine." During sentencing, the court stated, "Mr. Porras is to pay a restitution fine of $280 pursuant to [section 1202.4, subdivision (b)]." This statement followed on the heels of a lengthy discussion by the court in which it explained the basis for imposing the mid-term base sentence, including consideration of mitigating and aggravating factors as well as the fact the court determined Porras gave perjured testimony during trial. The restitution statement also followed the court's denial of Porras's motion to dismiss his prior robbery strike, in which the court made the following findings: "[t]he nature of the present assault offense, in the abstract, is more serious than other felonies and indicates a greater degree of danger to society in light of the weapon used by the defendant, the serious injuries sustained by the victim, the fact that the defendant chased the victim on the freeway and through neighborhoods for the purpose of catching the victim and committing the assault, and the fact the defendant was aided by his brother." Given these circumstances, we conclude the trial court properly exercised its discretion in fixing the amount of restitution within the range authorized by statute.

Even if we were persuaded the court intended to impose the minimum restitution fine (which we are not), Porras failed to object to the amount of restitution at the sentencing hearing. We may deem the failure to object to a sentence imposed within the court's discretion a forfeiture of the claim on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351, 356.) "The appropriate amount of restitution is precisely the sort of factual

determination that can and should be brought to the trial court's attention if the defendant believes the award is excessive."  (*People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218.)

DISPOSITION

The judgment is affirmed.


McCONNELL, P. J.

WE CONCUR:


HALLER, J.


AARON, J.